Robert S. Reder (024117)
Shayna Fernandez Watts (027342)
BLYTHE GRACE PLLC
4040 East Camelback Road, Suite 275
Phoenix, Arizona 85018
Telephone: (602) 237-5366
Facsimile: (602) 237-5546
Email: robert@blythegrace.com
Email: shayna@blythegrace.com
Attorneys for plaintiff Jim Lewis

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jim Lewis, an Arizona resident,<br><br>Plaintiff,<br><br>v.<br><br>Lilly USA LLC, an Indiana limited liability company,<br><br>Defendant. | No.<br><br>**COMPLAINT** |

Plaintiff Jim Lewis, for his Complaint against Defendant Lilly USA LLC, states:

### The Parties, Jurisdiction, and Venue

1. Mr. Lewis is an individual residing in Maricopa County, Arizona.

2. Lilly USA is an Indiana limited liability company licensed to and doing business in Maricopa County, Arizona.

3. The claims contained in this Complaint arise from Lilly USA's acts and omissions in Maricopa County, Arizona.

4. This Court has jurisdiction under A.R.S. § 12-123.

5. Venue is proper under A.R.S. § 12-401.

### General Allegations

6. Mr. Lewis is a Native American who worked for Lilly USA as an Executive Sales Representative, which was a full time, salaried position.

7. During Mr. Lewis' tenure at Lilly USA, but before his car accident described below, Mr. Lewis raised concerns about his back with Lilly USA. Specifically, Mr. Lewis told Lilly USA that because of the type of company car provided to him to do his job, Mr. Lewis' knees were positioned above his hips, which caused permanent back problems.

8. Mr. Lewis requested an accommodation, which would permit him to perform the essential functions of his job.

9. In response to his accommodation request, Lilly USA provided Mr. Lewis with a cushion to sit on in the driver's seat of the company car.

10. While Lilly USA's solution did alleviate some of Mr. Lewis' back pain, his head now touched the interior top of the car.

11. Mr. Lewis reported this condition to Lilly USA.

12. In response, Lilly USA's Health and Safety Department conducted a safety assessment and concluded that Lilly USA's seat cushion solution made driving the car unsafe in the event of an accident.

13. Despite Lilly USA's own report, the company did not alter Mr. Lewis' accommodation, but instead required him to continue performing his job in an unsafe manner.

14. On November 6, 2018, Mr. Lewis sustained serious injuries in a car accident while working for Lilly USA.

15. As a result of Mr. Lewis' injuries, he suffered from multiple debilitating spine, back, and other injuries.

16. Mr. Lewis reported these disabilities to Lilly USA, which limited Mr. Lewis' ability to do his job without an accommodation.

17. Mr. Lewis' job functions at Lilly USA required driving, sitting, bending of the back and neck to lift materials, and significant concentration and focus while driving and meeting with physicians.

18. Mr. Lewis therefore requested an accommodation from Lilly USA that would permit him to perform these functions despite his known disabilities.

BLYTHE GRACE PLLC
4040 East Camelback Road | Suite 275
Phoenix, Arizona 85018

2

19. In response, Lilly USA requested that Mr. Lewis provide the company with medical records substantiating his disabilities even though his spine and back problems were obvious.

20. Mr. Lewis provided Lilly USA with the requested documents.

21. After Mr. Lewis provided his medical records to Lilly USA, the company failed to engage in the required interactive process with Mr. Lewis to determine what accommodation would permit him to perform his job.

22. Lilly USA ultimately failed to provide Mr. Lewis any accommodation whatsoever.

23. Lilly then requested additional medical records from Mr. Lewis to further substantiate his disability. Mr. Lewis provided the requested documents.

24. In response to these additional records, Lilly USA again failed to engage in the interactive process or offer Mr. Lewis any accommodation.

25. Mr. Lewis followed up with Lilly USA several times regarding an accommodation so that he could do his job.

26. After several follow ups, Lilly USA told Mr. Lewis "you can't work in the field anymore" and promised that it would find Mr. Lewis another, comparable job at the company.

27. Lilly USA also told Mr. Lewis that if it could not find him a job, it would terminate his employment with the company.

28. Lilly USA never offered Mr. Lewis a comparable job – namely an alternative job in a similar location and pay as his executive position.

29. During this time Mr. Lewis continued to follow up with Lilly USA requesting an accommodation. Lilly USA ignored Mr. Lewis' requests.

30. Lilly USA instead contacted Mr. Lewis and gave him a deadline of May 16, 2019, to decide whether he would go on "medical reassignment" to a then unspecified job.

31.     On or about May 14, 2019, Mr. Lewis received a call from Lilly USA regarding the proposed "medical reassignment" to a desk job in Indianapolis that Mr. Lewis might be eligible for.

32.     Lilly USA did not offer Mr. Lewis the desk job, but instead gave Mr. Lewis a number to call to discuss a possible "medical reassignment" to the desk job.

33.     The available desk job was not comparable to Mr. Lewis' executive position and it would have been a substantial change in title, pay, and location.

34.     Mr. Lewis had no obligation to apply for a new job withing Lilly USA – instead, Lilly USA had a duty to accommodate Mr. Lewis.

35.     Lilly USA never offered Mr. Lewis any alternative job, whether comparable to his executive position or otherwise.

36.     During this time Mr. Lewis continued to follow up with Lilly USA requesting an accommodation.  Lilly USA ignored Mr. Lewis' requests.

37.     On May 16, 2019, without any warning, Lilly USA sent Mr. Lewis a proposed severance agreement and requested he sign it.

38.     From May 16 to May 23, 2019, Mr. Lewis attempted to contact Lilly USA to discuss the agreement and his situation.

39.     On May 23, 2019, Mr. Lewis placed his last call to Lilly USA.

40.     When Mr. Lewis did not hear back from Lilly USA on May 23, 2019, the next day he realized that Lilly USA would not respond and had moved on.

41.     Lilly USA never actually terminated Mr. Lewis' employment – instead, Lilly USA sent Mr. Lewis a proposed severance agreement then ignored his communications.

42.     Before Mr. Lewis' car accident that lead to his injuries, his direct supervisor told him that he did not like "Indians" (referring to Native Americans) and also referred to Native Americans as "those people."

43.     In addition, Mr. Lewis' supervisor went out of his way to make the workplace difficult for Mr. Lewis.

4

44. After the situation became intolerable, Mr. Lewis reported his supervisor's misconduct to Lilly USA.

45. In response to Mr. Lewis' discrimination report, Lilly USA did nothing.

46. Lilly USA terminated Mr. Lewis because he is disabled in violation of the ADA and Arizona law, and retaliated against him for reporting his disabilities.

47. Lilly USA also discriminated against Mr. Lewis because he is a Native American and terminated Mr. Lewis because he reported the discriminatory conduct of his supervisor.

48. Lilly USA is legally responsible for the conduct of its supervisors.

49. Lilly USA's unlawful termination of Mr. Lewis damaged him.

## Count I

### (ADA – Discrimination)

50. Mr. Lewis incorporates by reference the allegations contained in the forgoing paragraphs.

51. The ADA prohibits an employer from discriminating against a qualified individual with a disability because of the disability of such individual "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

52. The term "discriminate" includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

53. Mr. Lewis is a "qualified individual" and an "employee" under the ADA, as defined by 42 U.S.C. § 12111(4), (8).

54. Lilly USA is a "covered entity" and an "employer" under the ADA, as defined by 42 U.S.C. § 12111(2), (5).

55. Lilly USA discriminated against Mr. Lewis on the basis of a disability, or a

5

perceived disability, contrary to the provisions of 42 U.S.C. § 12112(a).

56. Lilly USA failed to offer or to provide Mr. Lewis with reasonable accommodation under the ADA.

57. The actions of Lilly USA were done in reckless indifference to Mr. Lewis' federally protected rights and Lilly USA willfully violated the ADA.

58. Mr. Lewis is entitled to recover damages against Lilly USA.

## Count II

### (ADA – Retaliation)

59. Mr. Lewis incorporates by reference all the allegations contained in the forgoing paragraphs.

60. For a plaintiff to establish retaliation in violation of the ADA, he must prove that: (1) they engaged in conduct protected under the ADA; (2) they were subjected to an adverse employment action at the time, or after, the protected conduct occurred; (3) the defendant terminated the plaintiff because of his conduct protected under the ADA. *See Barnett v. U. S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000) (en banc), vacated on other grounds, 535 U.S. 391 (2002); 29 C.F.R. § 1630.12(a) (1999) (explaining retaliation and coercions); 42 U.S.C. § 12203(a) (defining retaliation). Because 42 U.S.C. § 12203(a) applies to "any individual," the plaintiff need not prove disability within the meaning of the ADA to sustain a retaliation claim under the ADA. *See Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 827-28 (9th Cir. 2009).

61. Mr. Lewis engaged in conduct protected under the ADA as set forth in detail above.

62. In response, Lilly USA ignored Mr. Lewis' accommodation requests and then terminated him.

63. Lilly USA terminated Mr. Lewis because he is disabled under the ADA.

64. Lilly USA acted with reckless indifference to Mr. Lewis' federally protected rights and Lilly USA willfully violated the ADA.

65. Mr. Lewis is entitled to recover damages against Lilly USA.

6

## Count III

### (Title VII – Discrimination)

66. Mr. Lewis incorporates by reference all the allegations contained in the forgoing paragraphs.

67. To support a claim of race discrimination under Title VII, a plaintiff must demonstrate that they: (1) are a member of a protected class; (2) suffered an adverse employment action; (3) were performing their job duties at a level that met their employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by a similarly qualified applicant outside of the protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A Title VII plaintiff need only prove that a protected status was "a motivating factor" for an adverse employment action. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003).

68. Mr. Lewis is a member of a protected class – Native American.

69. Mr. Lewis direct supervisor discriminated against him as set forth in detail above.

70. Mr. Lewis reported his supervisor's discrimination to Lilly USA.

71. In response, Lilly USA did nothing and then terminated his employment. Lilly USA had no legitimate reason for Mr. Lewis' termination because Lilly USA had always given Mr. Lewis stellar performance reviews.

72. Lilly USA discriminated against Mr. Lewis with respect to the terms and conditions of his employment because of his race, Native American, in violation of 42 U.S.C. § 2000e.

73. Lilly USA intentionally discriminated against Mr. Lewis based on his race in the performance, modification, and termination of his employment, and the enjoyment of all benefits, privileges, terms, and conditions of the employment relationship.

74. As a result of the intentional acts or omissions of Lilly USA, Mr. Lewis has suffered damages.

75. Mr. Lewis is entitled to recover those damages against Lilly USA.

## Count IV

### (Title VII – Hostile Work Environment)

76. Mr. Lewis incorporates by reference the allegations contained in the forgoing paragraphs.

77. To establish a claim of hostile work environment harassment under Title VII, a plaintiff must show that: (1) they were subjected to insults, jokes, or other verbal comments or intimidation of a racial nature or other conduct affecting other Title VII protected characteristics; (2) the conduct was unwelcome; (3) the conduct was sufficiently severe or pervasive to alter the conditions of their employment and create a racially abusive or hostile work environment; (4) they perceived the working environment to be abusive or hostile; and; (5) a reasonable woman in their circumstances would consider the working environment to be abusive or hostile. *See Fuller v. City of Oakland, California*, 47 F. 3d 1522, 1527 (9th Cir. 1995); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

78. A defendant is also liable to a plaintiff if its supervisor created a hostile work environment for that plaintiffs. A "supervisor" is empowered by the employer to take tangible employment actions regarding the employee, such as hiring, firing, failing to prompt, reassigning with significantly different responsibilities, or significantly changing benefits. *See Vance v. Ball State University*, 133 S. Ct. 2434 (2013); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998); *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001). When harassment is by the plaintiff's supervisor, an employer is vicariously liable. *Vance*, 133 S. Ct. at 2439. For vicarious liability to attach the supervisor "must be empowered by the employer to take tangible employment actions against the plaintiff." *Id.*

79. Lilly USA's supervisor discriminated against Mr. Lewis as set forth above and created a hostile work environment that no reasonable person could tolerate.

80. Mr. Lewis reported the hostile work environment to Lilly USA.

81. In response, Lilly USA did nothing and then terminated his employment. Lilly USA had no legitimate reason for Mr. Lewis' termination because Lilly USA had

8

1  always given Mr. Lewis stellar performance reviews.

2      82.    Lilly USA discriminated against Mr. Lewis with respect to the terms and
3  conditions of his employment because of his race, Native American, in violation of 42
4  U.S.C. § 2000e.

5      83.    Lilly USA intentionally discriminated against Mr. Lewis based on his race in
6  the performance, modification, and termination of his employment, and the enjoyment of
7  all benefits, privileges, terms, and conditions of the employment relationship.

8      84.    As a result of the intentional acts or omissions of Lilly USA, Mr. Lewis has
9  suffered damages.

10     85.    Mr. Lewis is entitled to recover those damages against Lilly USA.

## Count V

### (Title VII – Retaliation)

13     86.    Mr. Lewis incorporates by reference the allegations contained in the forgoing
14 paragraphs.

15     87.    To support a claim of retaliation under Title VII, a plaintiff must show that
16 they: (1) engaged in or were engaging in an activity protected under federal law; (2) the
17 employer subjected the plaintiff to an adverse employment action; and (3) the plaintiff was
18 subjected to the adverse employment action because of their participation in the protected
19 activity. A plaintiff is "subjected to an adverse employment action" because of their
20 participation in the protected activity if the adverse employment action would not have
21 occurred but for that participation. *See E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d
22 1008, 1013-14 (9th Cir. 1983); *Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1354-56
23 (9th Cir.1984); *Crown Zellerbach*, 720 F.2d at 1015; *See Passantino v. Johnson & Johnson
24 Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000). "A plaintiff making a retaliation
25 claim under § 2000e-3(a) must establish that his or her protected activity was a but-for
26 cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
27 133 S. Ct. 2517, 2534 (2013). Title VII makes it an unlawful employment practice for a
28 person covered by the Act to discriminate against an individual "because he has opposed

9

any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

88. Mr. Lewis engaged in an activity protected under Title VII by reporting the discrimination and hostile work environment set forth above.

89. In response, Lilly USA did nothing and then terminated his employment. Lilly USA had no legitimate reason for Mr. Lewis' termination because Lilly USA had always given Mr. Lewis stellar performance reviews.

90. Lilly USA discriminated against Mr. Lewis with respect to the terms and conditions of his employment because of his race, Native American, in violation of 42 U.S.C. § 2000e.

91. Lilly USA intentionally discriminated against Mr. Lewis based on his race in the performance, modification, and termination of his employment, and the enjoyment of all benefits, privileges, terms, and conditions of the employment relationship.

92. As a result of the intentional acts or omissions of Lilly USA, Mr. Lewis has suffered damages.

93. Mr. Lewis is entitled to recover those damages against Lilly USA.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues and claims so triable.

## Prayer for Relief

Mr. Lewis requests the following relief against Lilly USA:

1. Judgment in favor of Mr. Lewis on all claims.
2. Damages under the ADA.
3. Damages under Title VII.
4. Statutory, compensatory, consequential, and nominal damages in at least the amount of $500,000.00.
5. Punitive damages.
6. Attorneys' fees and costs.
7. Accrued and accruing pre- and post- judgment interest at the statutory rates.

8.  Such other relief as the Court deems proper.

DATED this 12th day of November 2020.

                                       BLYTHE GRACE PLLC

                                       */s/ Robert S. Reder*
                                       Robert S. Reder
                                       Shayna Fernandez Watts
                                       4040 East Camelback Road, Suite 275
                                       Phoenix, Arizona 85018
                                       Attorneys for plaintiff Jim Lewis